May it please the Court, Katya Mayhew, CJA Counsel, representing Petitioner Michael Self. I reserve two minutes for rebuttal. Okay. Petitioner has to make a case for exceptional circumstances, and he has done that. Petitioner has documented that the extraordinary circumstances that stood in his way are state action and legal error. To put it in context, EDPA was enacted in 1996. Four years later, the State Council of the Federal Courts that Petitioner's satisfaction — is this too loud? No, I'm deaf, so loud is good. Okay. Again, the State Council of Federal Courts that Petitioner's satisfaction of the exhaustion requirement was untenable and moved for dismissal of the petition of statute of limitation grounds. This amounts to extraordinary circumstances. I'm not saying it's malfeasance by any means, but it was inadvertence, it was neglect, it was a mistake. Because what happened in 2000 — again, EDPA was enacted in 1996. In 2000, the State circumvented court directive requiring it to file an answer and submitted a motion to dismiss. Before that, what happens is that the State failed to obtain the complete record from the trial court, including obtaining the delayed petition for review that the petitioner used as a vehicle to satisfy the exhaustion requirement. This led the State to misconstrue the procedural posture of the case and applicable law. Here's a problem I have with the position you're taking on behalf of your client. I mean, it's just in the facts, there's nothing we can do about it, but the question is, what's the consequence? Jimenez tells us that the law has changed, and the fact that the Arizona Supreme Court belatedly decided to hear the appeal on the merits means that the statute is told, such that the EDPA statute of limitations then starts to run from the last date of that. Now, previously that had not been the law. He does not seek reopening under Rule 60B for, I think, just a little over five years after Jimenez is decided. Could the court legitimately hold that five-plus years period against him, as you say, because he wasn't prompt after Jimenez was decided? Absolutely not. I understand. Okay. Why not? Because the courts and the State told the Petitioner that his position, his interpretation of the law was incorrect. He is incarcerated. This is not a matter of procedural ignorance. This is a point of law that Petitioner was able to read the statute and say, this is what it says. He comes into court in every level of ‑‑ at every level he's being told, you are incorrect. He has no way of knowing that the Supreme Court issued a decision affirming what he said. And, again, I want to take issue with the categorization of Jimenez as a change in the law. Jimenez is simply an interpretation. It is not a new law. Again, I do want to focus on the fact that AEDPA was enacted in 1996. Every word of this document has been litigated, and the Supreme Court has had to address it on many levels. That does not make it a new interpretation. Okay. Let me ask you this. On page 26 of your brief, you quote some writing from your client who recounts that he learned about the Jimenez case in talking to a fellow inmate in around May of 2014 and so on. Tell me how that got into the record, because I was looking through the papers that I had, and I couldn't find it. But I'm sure it's there. It's on the docket and so on. Just help me understand where that is in the record, and was that in front of the district court, and in what form? I don't have everything in front of me. That's okay. Just give me a general idea. Petitioner made this representation during the pleadings that he was filing in district court. So this is in the record before the district court. I don't know exactly when he filed it. It probably was in his reply to the court's orders. Okay. And you give me a docket entry and so on. But this information was in front of the district court. Yes, it was. And, again, I want to point out that what I do want to point out is that the fact that the burden the defendant, the petitioner, has to meet is extraordinary circumstances. The diligence issue does not, is not necessarily something that should be held to the same level as the defendant being able to meet the extraordinary circumstances test, because what we have is that in this case, because it is not a procedural issue, diligence is not measured by the passage of time. It can only be measured by actual knowledge. And this is what the district court actually, I'm not going to say he accepted it, but this is what he alluded to. He wanted the defendant to kind of explain how he heard about it. And the defendant said it. I was talking about my case to another inmate, and he tells me this seems to fit in with what happens in Jimenez. And what the defendant did, he basically talked to other inmates, and he found out about Gonzales' insight. And he was told, well, Rule 60B is the way that you bring this issue up a second time. Is this what you want us to consider to justify or to explain extraordinary circumstances? No. Extraordinary circumstances is based on the State's action and the legal error. And the State action in this case had to do with the fact that they circumvented the court directive. They did not obtain the full record to understand the procedural posture of the case. Legal error occurred when the district court says, I don't have the whole record, but at this time, I'm going to rule against the defendant on statute of limitations ground. So those are, I mean, this is kind of a stacking of the, against the defendant. Time and time again, he's being told, this is, there is absolutely no way that your interpretation of the law is correct. And he's being told this again and again for 16 years. And here we are today, and the State is still, the State still says that the case is decided after the decision and petitioner's case constitutes ground to basically keep the courthouse closed to the petitioner. You've got two minutes. Let's hear from the other side, and then you've got the time for rebuttal. Good morning, Your Honors. My name is Adele Ponce, and I represent the State of Arizona in this matter. The district court did not abuse its discretion in finding that the Supreme Court's decision in Jimenez v. Quarterman issued five years prior didn't warrant reopening the petitioner's case, which had been dismissed for over 10 years. The district court's application of the factors in Gonzalez v. Crosby and Phelps v. Alameda was not implausible or without support in the record and should be upheld by this court. Gonzalez held that new interpretation. Can I interrupt you? The district judge went through the various factors. I'm now on page 5 of the district court's order. The district court writes third, just going through the factors. There is no indication that the final judgment being challenged has caused either of the parties to change their position and reliance on that judgment. Thus, this factor weighs against reopening. Didn't he make a mistake? That factor weighs in favor because nobody changed their position in reliance. Certainly the district court's evaluation of that factor is different from the way that the court evaluated in Phelps v. Alameda. I think the judge just made a mistake. Maybe it's even a typo, but I think it weighs in favor of reopening. I think if you follow strictly the analysis in Phelps v. Alameda, it does weigh in favor of reopening. Well, follow strictly. I mean, Phelps is governing law, right? Yes. But Phelps also said that each of the factors, the factors are not rigid. No, I understand that. But I'm just trying to, looking at that factor itself, I think the judge has made a mistake. That doesn't necessarily mean that when you look at all the factors, the answer has to come out the other way. It might or might not, but I think he made a mistake on that factor. Well, and if the court finds that the district court did err in weighing that factor, which I submit isn't necessarily correct. Why is it not necessarily correct? I think because it's not an abuse of discretion for the court to determine that the fact that the parties didn't rely or that there is no change in the status of the parties weighs in favor of the status quo. I mean, I think that's not an abuse of discretion on the part of the court to say. But that misunderstands that factor. I mean, if you have a state of affairs and the parties change their position in reliance on the state of affairs, that's a reason to leave the state of affairs as it was. We all understand that. But if nobody did anything in reliance on it, well, then there's no, with respect to that particular factor, there's no harm in changing it. I mean, that's just two plus two makes four. No, and I understand that, Your Honor, and I think that follows the reasoning of the court in Phelps. But as. . . Just fess up.  You may not lose the case, but he made a mistake. And if he made a mistake, as the court indicated, I think the court would have to find still that he reached the wrong conclusion in weighing all of the factors. And I think the more important factors are really three other factors that were, or certainly the first two that were emphasized by the petitioner, and the third factor that really wasn't discussed much, which is the ten-year delay between the time he filed his petition to reopen and when his case was initially dismissed. Well, but we know under Jimenez that, in fact, if Jimenez is the governing law, that he actually filed his habeas petition on time. Well, respondents think that Jimenez is distinguishable from this case, but I think. . . Because? Because the petitioner in Jimenez had obtained permission to file a direct appeal. Well, as he did here. Well, the petitioner in this case. . . So the petitioner in Jimenez was granted permission to file an out-of-time direct appeal. He'd never had his appeal heard by the Texas Court of Appeals. The Court of Appeals hadn't decided his case or looked at the merits of his case, and the Texas Court also explicitly stated that it was resetting, essentially, all the post-conviction deadlines in that case. I think in this case, by contrast, the petitioner sought permission to file an out-of-time petition for review. It asked the Court of Appeals. . . He got the Arizona Supreme Court to hear the appeal out of time, or am I mistaking the record? The Arizona Supreme Court did not hear his appeal out of time. The Arizona Supreme Court denied review. So the Arizona Supreme Court didn't consider the case. But it didn't deny review based on untimeliness. No, it didn't. It simply denied review and didn't give a reason for it. Yeah, but as I read then, in Arizona law, that's a denial on the merits, not untimeliness. Well, it was a denial. It was a summary denial. But you have to hear it, I mean, consider it before it can be denied. So maybe it's more accurate to say that the Supreme Court considered. . . It denied review. It didn't deny. . . So review by the Supreme Court is completely discretionary. So the Court didn't actually review it. But it considered it. I mean, it didn't reject it. It considered. . . On a procedural basis. It simply denied review. It didn't review it. So it didn't deny it on any sort of merits. It didn't consider the case. It didn't exercise its discretion to review it. But maybe we're mincing words here, but we have petitions for review all the time that we deny. That doesn't mean we didn't consider the petition. It means that after consideration we deny review. Well, not in. . . I think this Court, though, is not a court of discretionary review for the cases that come up from the district court. The Arizona Supreme Court, though, for criminal appeals is a court of discretionary review. So it's more like the United States Supreme Court when you petition for cert and the court denies review. That's not an on-the-merits denial. That's simply saying we're not reviewing your case. And that's what happened in this case. Do you know if they issued any kind of opinion or if it was a perfunctory one-sentence order or something like that? It was a perfunctory one-sentence order denying review. But is there a distinction made between procedural denials and denials of review that are not procedurally based? Can you tell? If there were a denial on a procedural basis, would the Court have said that? And I'm not sure about that. Yeah, I'm not sure about that, Your Honor. Now, I'm reading it files a motion to file a delayed petition for review in the Arizona Supreme Court. And then I think I'm reading it in the correct order. The Arizona Supreme Court, no. Point me in the record, because I've got the materials here in front of me, I believe, to the order where the Arizona Supreme Court denies review. Sure. And that is, I think, Exhibit H in the supplemental excerpt of the record. Exhibit H. Or is that I? Following action, there was a petition for review denied, right? Yes. Got it. Okay. Now, I understand you're contesting the point. I may end up reading this differently. But assume for the purposes of my question. Yes. That this was a review that restarts the, this denial restarts the EDPA clock under Jimenez. Yes. So what happens if that's so? Even if that's so, the district court's analysis of the factors wasn't an abuse of discretion. It was correct. The court correctly determined that the denial or dismissal of the petitioner's original petition was correct under the law as it existed before Jimenez, as the district court emphasized. This court affirmed the dismissal on statute of limitations ground. Cases from the Ninth Circuit at that time held that timely state court proceedings could not restart the statute of limitations once expired. The district court reads the Arizona Supreme Court acts in the way I just did in my hypothetical. Do you understand that? I understand what Your Honor is saying. I think the court says that it's probably, the petition was probably timely. Well, I'll just read the words. He says, although it appears that under the holding of Jimenez, self's petition would have been deemed timely, Jimenez was not decided at the time. Right. And he weighs that factor in favor of reopening. But ultimately, he finds that the long delay between the time the petition was initially dismissed and the petition for reopen was filed, petitioner's lack of diligence and the fact that the original. Let's talk about lack of diligence. There are two reasons for two periods. The first lack of diligence, he says, and I'm sure you understand. If you understand how prisons operate, he's afraid he's going to get killed when he's in the first prison if they know that he's in there for being a child molester. And as soon as he's transferred to another prison where he's not afraid of having the papers in his cell, a prison that has nothing but child molesters, he files. Now, so that's the first delay, which is a substantial delay. The second delay is the delay after Jimenez is decided. And he says, well, the reason I delayed after Jimenez was decided, I didn't know about Jimenez. And as soon as I found out about it, I filed my 60B almost immediately. So let's take them one by one. Is the first period, is his reason given insufficient to justify the delay? Well, I think the first period is not really relevant to the question of diligence that's at issue in this case. I think the second factor. But you're talking about the long delay, and I thought you included in the long delay as a justification for denial now. I thought you included that first period. No, I didn't. The second period between the time of the decision in Jimenez and the time of filing. Well, no, I included, excuse me, the time of the dismissal of his initial petition, habeas petition. That was in 2000, and it was affirmed by this court in 2002. That's after the initial period that you described. That's the third factor in Phelps. It's at least the third factor that was discussed by the district court, which is that it's been 10 years since this petitioner's habeas petition was found untimely, something that was affirmed by this court. And that's a separate Phelps determination. But that was pre-Jimenez. Well, a portion of it was pre-Jimenez, and then the five years following. We denied review in this court the previous time. It was pre-Jimenez. Yes. That's correct. You know, I have a problem with cases like this where one procedural thing after another, after all the fancy talk is done, he never gets his habeas petition heard on the merits. Now, we all know the most habeas petitions are losers. I have no idea whether this is a loser or not, but it may well be. But somehow someone looking at this system from the outside sort of going through this would say, you know, this guy just never got a break, and because of the procedural things and because he was in prison where he was going to get killed if he had the papers caught and found in his cell, well, too bad. You're out of luck. You might or might not have a good habeas petition, but we're never, never going to get to the merits. It just doesn't strike me as a good system, and I'm not sure we're required to have our system operate that way, particularly under Phelps. Well, Rule 60 provides that a petition has to be brought within a reasonable amount of time. The district court here didn't abuse its discretion in finding that this five-year delay was not a reasonable period of time. I think if the court, if the rule were simply, as Petitioner states, when you find out about the case, then that allows you to file a motion to reopen, there would be effectively no limit on the amount of time that could pass before a petitioner could bring a motion to reopen. The court focused on the reason he gave for the delay between him and his being decided and his filing that 60B motion? The district court took him at his word that it was simply that he found out what the decision was, and the court noted that and said that that simply wasn't enough. I mean, ignorance of the law doesn't work to equitably be told by statute of limitations, and it shouldn't work to permit an endless period of time before a petitioner can file a motion to reopen. I think especially given that Gonzales held that changes in the law are in extraordinary circumstances that warrant reopening a case. I mean, these types of things. Would you have the ability in the district court to say, you know, this is really late, but we're not going to oppose this 60B motion, we're just going to let this habeas petition be heard on the merits? Would you have had that power? I'm sorry, can Your Honor repeat that question? Would you have had the power in the district court when the Rule 60B motion is made by Mr. Self? Would you have been able to say, we don't oppose, we'll allow reopening? I don't think so. Why not? Because the rule requires that it be brought within a period of time, and I think the district court would have had to form its own independent assessment of whether to reopen the case. Well, I think it was under 60B-6 that does not have a time period. No, it has to be brought within a reasonable period of time. I think any motion under 60B, I think Rule 60C provides it has to be brought within a reasonable period of time. Now, there's not a set limit, but five years. Certainly the district court didn't abuse its discretion in finding that a five-year delay was not a reasonable delay. But you're not quite responding to my question. What I'm trying to figure out is what if you, what if the state, I'm not sure I'm talking to you personally, what if the state had said when the 60B motion was filed, we don't oppose, we're happy to reopen, we're quite content to address the habeas petition on the merits? I suppose we could have done that, but I think the court would have still had to make its own application of the rules to determine whether the circumstances warranted reopening, and here they didn't. And I think it also bears noting that the petitioner, you know, really focuses on the fact that the state initially filed a motion to dismiss, and the state of the record that was before the district court that initially dismissed the case. But I think on page one of its reply brief, it essentially admits that Jimenez v. Quarterman doesn't provide the extraordinary circumstances necessary to reopen this case. I think its focus on this prior procedure is really misplaced for a number of reasons. First, those issues weren't before the district court that denied its motion to reopen. But just one question. The court went through six separate factors in determining what to do with the petition. Supposing we were to determine that one of those, an analysis of one of those factors was flawed. I mean, there are six factors, and the way the court came out, it was 4 to 2 against the petitioner in this case. Now, what if it's 3 to 3? What would the analysis be? What if all the factors sort of level out? So Phelps doesn't provide that each of the factors is weighed evenly. I think what this Court has to determine is whether the court reached the wrong conclusion in weighing the factors. Well, what if we say, yes, you reached the wrong conclusion in factor number 3? Right. But then I think it would have to look at the remainder of factors and find if the weight of its overall decision, whether its determination should be upheld, given the weight that the other factors should have. And I think in this case, given the similarity between the petitioner in this case and the petitioner in Gonzales, I think Phelps said that the first two factors weigh particularly heavily in a case such as this, and those two factors are whether the original dismissal was correct under the laws as it existed at the time, and diligence. And here, the District Court simply didn't abuse its discretion in finding that the five-year delay was not diligence, was not an exhibit of diligence on the part of the petitioner, and that the dismissal of the petition in the first place was correct under the law as it existed at the time. I mean, as the District Court pointed out, this Court had affirmed the dismissal. Cases from the Ninth Circuit at the time held that timely state court proceedings could not restart the AEDPA statute of limitations. And all the other circuits that had specifically looked at whether an out-of-time appeal could reset the AEDPA statute of limitations held that it could not. I think the petitioner really narrowly and rigidly reads this factor to require a Supreme Court decision that directly overturns a Ninth Circuit precedent that was in place at the time of the dismissal. But I think this narrow reading really turns Gonzales on its head, given that Gonzales held that new interpretations of AEDPA statute of limitations are not extraordinary circumstances that weren't reopening them up. Now, I know we're taking you well over time, but this case is bothering me. I'm now reading from the District Court's order when the judge is talking about diligence. Second, as to diligence in pursuing the issue, C. Phelps, da-da-da, the petitioner does not provide any details as to when he became aware of the Jimenez decision. Instead, Self merely asserts that he was, quote, made aware of the decision, that it was suggested he would file a Rule 60b motion, and that he learned about a possible case for the conversation between inmates. Well, that's quite inconsistent with the language quoted on page 26 of your opponent's brief. The district judge says he does not provide any details as to when. Well, he says this discussion was around May of 2014. That's — that tells him when. Was — did the district judge not have this in front of him? No, I believe he did. I mean, I think what the court may be referring to there is the fact that in the motion to reopen, the petitioner provides, as you discussed, with the initial delay in filing his petition for an out-of-time appeal, he explains the reasons why he waited six years to do that. He explains that he was under duress, that he was, you know, worried for his safety and all of this, but that when it comes to explaining the five-year delay in filing the motion to reopen pursuant to Jimenez, even his explanation that he provides essentially amounts to being told after the — five years after the decision came out that he became — being told about the decision. I mean, those aren't the kinds of details, like the ones that he provides accounting for the reason for the delay. It's simply, oh, I didn't know, and someone told me about it. Yeah, but I don't understand why the judge says he does not provide any details as to when. No, he says very precisely, I didn't know about it, and the inmate told me. And he told me in May 2014. Well, I think even given the petitioner's explanation that he was told about it in 2014, that simply doesn't establish diligence or undermine the — Well, I understand that. But somehow, as I read that, what the judge wrote, I have trouble understanding how he can write that if he's read what I just read to you from the statement from Mr. Self. And perhaps the court was simply referring to his — the actual motion to reopen that he filed. I got it. Okay. Sorry we've taken you so long. Any other questions from the bench? No. Okay. No, if the court has no further questions, I'd ask that the court affirm the district court's denial of the motion to reopen. Okay. Thank you. Thank you. I can answer that question. Petitioner gave this explanation after the court issued its ruling. So the court issued its ruling, and petitioner's objection to the report and recommendation, he lays out what the facts were. Petitioner was proper. He did not address diligence as detailed as he does when he files his objection to the report and recommendations. But this is not — I didn't read from the report and recommendation of a magistrate. I read from the district court order. Well, then, I don't have — I'm sorry. I don't have it in front of me. I know petitioner, every time a court rules, he basically goes back and he says, well, this is the case. So he fleshes it out after he receives the court order. So this is what happens in this case. Every time the court says, well, you know, you basically didn't do this, he goes, wait a second. I did do it, and this is when I did it. So I'm very sure about this fact that he did tell the court, I found out about this, and now I'm here. Then the court says, well, but you did not give me enough information. And at that time, petitioner responds, basically, this is what happened. I heard about it in May, and I filed my motion, and I filed my motion, I believe, in two or three months afterwards. So the court did not have — the court did not have petitioner's second motion before it when it issued its order. But I do want to make the point about the court had a question about the fact that — about the ruling by the Supreme Court. And basically what happens is that finality does not turn on what the court does with it. Finality occurs when the judgment of conviction has been rendered, the availability of appeal exhausted. And this is what petitioner did. He exhausted it by going back to the court of appeals. What the courts do after that fact do not impact the exhaustion requirement. And this is what petitioner did. He basically read the rule and understood that he had to exhaust his claim. He filed a motion for delayed appeal. It was granted. So this — so what the court does afterward does not impact any other decision. Okay. Good. Thank you. Thank you. Okay. Thank both sides for their arguments. Self v. Ryan now submitted for decision. The next case on the calendar this morning, Romero v. Ryan.
judges: Fuentes, W. Fletcher, Rawlinson